**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| KAREN MARIE WILSON,<br>*Petitioner-Appellee*,<br><br>v.<br><br>COMMISSIONER OF INTERNAL<br>REVENUE,<br>*Respondent-Appellant*. | No. 10-72754<br><br>Tax Ct. No.<br>23882-04<br><br><br>OPINION |

Appeal from a Decision of the
United States Tax Court

Argued and Submitted
November 15, 2011—San Francisco, California

Filed January 15, 2013

Before: Sidney R. Thomas, Ronald M. Gould,
and Jay S. Bybee, Circuit Judges.

Opinion by Judge Thomas;
Dissent by Judge Bybee

## SUMMARY[*]

### Tax

Affirming the Tax Court's grant of innocent spouse relief under 26 U.S.C. § 6015, the panel held that the Tax Court properly reviewed new evidence outside the administrative record and correctly applied a de novo standard of review in determining the taxpayer's eligibility for equitable relief based on the text, structure, and legislative history of the statute.

Judge Bybee dissented. He would hold that, because the Tax Court is a "reviewing court" for purposes of the judicial review provisions of the Administrative Procedure Act, the Tax Court can only review the Secretary of the Treasury's exercise of discretion for an abuse of discretion.

### COUNSEL

Philip A. O'Connell, Jr., SNR Denton US LLP, Boston, Massachusetts; Katherine J. Evans and Khoa Ngo, SNR Denton US LLP, San Francisco, California, for Petitioner.

John A. DiCicco, Acting Assistant Attorney General; Teresa E. McLaughlin and Bethany B. Hauser, Attorneys, Tax Division, Department of Justice, Washington, D.C., for Respondent.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

THOMAS, Circuit Judge:

In this case, we consider how the Tax Court should review appeals for equitable innocent spouse relief from joint and several liability for unpaid taxes under 26 U.S.C. § 6015(f). We join the Eleventh Circuit and hold that the Tax Court properly considered new evidence outside the administrative record. We also conclude that the Tax Court correctly applied a de novo standard of review in determining the taxpayer's eligibility for equitable relief. We affirm the judgment of the Tax Court.

## I

Thousands of citizens each year discover to their surprise that they are liable for their former spouse's tax debt.[1] Most of them are recently divorced, separated, or widowed women.[2] Many are victims of domestic abuse, whose ability

---

[1] The Internal Revenue Service ("IRS") receives approximately 50,000 innocent spouse claims per year. Gen. Accounting Office, *Tax Administration: IRS's Innocent Spouse Program Improved; Balanced Performance Measures Needed* 13 (2002) ("2002 GAO Report"). The GAO estimated in 1998 that there were 587,000 individuals potentially eligible for innocent spouse relief, although it conceded that the actual number was probably substantially lower. Gen. Accounting Office, *Innocent Spouse: Alternatives for Improving Innocent Spouse Relief* 6 (1998).

[2] Stephanie Hunter McMahon, *An Empirical Study of Innocent Spouse Relief: Do Courts Implement Congress's Legislative Intent?*, 12 Fla. Tax Rev. 629, 632 (2012); Jerome Borison, *Alice Through a Very Dark and Confusing Looking Glass: Getting Equity from the Tax Court in Innocent Spouse Cases*, 30 Fam. L.Q. 123, 125 (1996).

to review or correct a joint return before it is filed is impaired.[3]  A substantial number are low-income, single parents.[4]

Congress has not turned a blind eye to this situation, and the legislative history of its response is important to our understanding of the Tax Court's role.

Before 1918, each spouse was required to file a separate return.  In 1918, Congress first permitted married couples to file a joint return,[5] and in 1921 clarified that the tax on a joint return was to be computed on aggregate income.[6]  Shortly thereafter, the Internal Revenue Service ("IRS") took the position that each spouse was individually responsible for the entire tax debt.[7]  However, we rejected that joint and several liability interpretation in 1935 and held that the IRS should

---

[3] National Taxpayer Advocate, *2011 Annual Report to Congress* 323–335, 455 (2011).  (In 1996, Congress created the independent Office of Taxpayer Advocate, headed by a National Taxpayer Advocate appointed by the Secretary of the Treasury Secretary.  Taxpayer Bill of Rights 2, Pub. L. No. 104-168, § 101, 110 Stat. 1452, 1453-56 (1996).  The National Taxpayer Advocate is required to submit an annual report to Congress.  *Id.* at § 101.)

[4] National Taxpayer Advocate, *2005 Annual Report to Congress* 422 (2005) ("65 percent of the taxpayers who request innocent spouse . . . relief make less than $30,000 per year. Ninety percent are women. Thirty-four percent are single filers and another 51 percent file as 'head of household,' meaning they are unmarried and maintain a home for children or certain other persons." (footnotes omitted)).

[5] Revenue Act of 1918, ch. 18, § 223, 40 Stat. 1057, 1074.

[6] Revenue Act of 1921, ch. 136, § 223(b)(2), 42 Stat. 227, 250.

[7] *Gummey v. Comm'r*, 26 B.T.A. 894, 895, 896 (1932).

apportion tax liability on the basis of each spouse's respective income. *Cole v. Comm'r*, 81 F.2d 485, 489 (9th Cir. 1935). Congress legislatively overruled *Cole* in 1938, adopting the IRS theory of joint and several marital tax liability,[8] and in 1948 created a separate tax schedule for joint returns.[9]

The "marriage bonus" awarded when filing jointly reduced tax liability for many married couples who resided in certain states. However, joint returns also imposed a heavy burden on some spouses who discovered they were liable for extraordinary tax debts created by a former spouse's fraudulent activities. During the first five decades of the income tax, the only way a spouse could avoid joint and several liability for taxes owed was to prove that he or she signed a joint tax return under duress. Reg. § 1.6013-4(d).[10] An individual who discovered a tax debt on illicit income concealed by her spouse had no reprieve.

The Tax Court commented on the unfairness of the rule, noting in one case that "[a]lthough we have much sympathy for petitioner's unhappy situation and are appalled at the harshness of this result in the instant case, the inflexible statute leaves no room for amelioration." *Scudder v.*

---

[8] Revenue Act of 1938, ch. 289, § 51(b), 52 Stat. 447, 476 (1938).

[9] Revenue Act of 1948, Pub. L. No. 471, ch. 168, 62 Stat. 110 (1948). The 1948 Act equalized tax treatment between married couples in states with community property laws and those who resided in separate property states. This equitable fix introduced the so called "marriage bonus" into the tax scheme.

[10] *See also* McMahon, 12 Fla. Tax Rev. at 636–37 (defining duress in this context as "a constraint of will so strong that it makes a person reasonably unable to resist a demand to sign.").

*Comm'r*, 48 T.C. 36, 41 (1967). The court concluded that "only remedial legislation can soften the impact of the rule of strict individual liability for income taxes on the many married women who are unknowingly subjected to its provisions by filing joint returns." *Id.*

In 1971, Congress passed the Innocent Spouse Act to provide relief from joint and several liability for innocent spouses in limited circumstances. Act of Jan. 12, 1971, Pub. L. No. 91-679, 83 Stat. 675 (1971). Under this legislation, taxpayers were eligible for relief only in cases involving unreported income and only if they could fulfill certain strict requirements. The scope of this hardship relief was expanded in 1984, but still required a spouse seeking relief to demonstrate (1) that a joint return was made for the taxable year; (2) that the joint return contained a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) that the taxpayer did not know, and had no reason to know, of the substantial understatement when he or she signed the joint return; and (4) that it would be inequitable to hold the taxpayer liable for the deficiency in income tax attributable to the substantial understatement. Deficit Reduction Act of 1984, Pub. L. 98-369, § 424, 98 Stat. 494, 801.

In 1995, the American Bar Association ("ABA") examined the innocent spouse defense and, after concluding that the defense did little to help "a reasonably knowledgeable spouse to protect herself (or, in rare cases, himself) against an unknown and unexpected tax liability," proposed replacing the joint and several tax liability standard with a proportional liability standard. ABA Section of Taxation Domestic Relations Committee, *Comments on*

*Liability of Divorced Spouses for Tax Deficiencies on Previously Filed Joint Returns*, 50 Tax Law. 395, 402 (1997).

In response, Congress directed the GAO and the Department of the Treasury to study the innocent spouse relief provisions and to evaluate the ABA proposal.[11] After evaluating the responses, Congress engaged in innocent spouse taxpayer reform by repealing the prior provisions altogether and enacting the current innocent spouse laws, codified at 26 U.S.C. § 6015, IRS Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 3201(b), 112 Stat. 685, 734–40. Under § 6015, the IRS may grant taxpayers relief from joint liability in three contexts. Sections 6015(b) and (c) apply when taxpayers have demonstrated an "understatement" or "deficiency" on joint returns filed with the IRS.[12] In non-deficiency cases, "where a spouse asks for relief on her own initiative, and not in response to a deficiency action or moves by the IRS to collect a tax debt," relief is available through § 6015(f), which provides for

---

[11] Taxpayer Bill of Rights II, Pub. L. No. 104-168, § 401, 110 Stat. 1452, 1469 (1996).

[12] Subsection (b) of § 6015 grants relief to taxpayers when: (1) "there is an understatement of tax attributable to erroneous items of one individual filing the joint return"; (2) the taxpayer establishes that "he or she did not know, and had no reason to know" about the understatement; (3) the totality of the circumstances indicates that it is inequitable to hold the taxpayer liable for the deficiency; and (4) the taxpayer files for innocent spouse relief within two years of the date on which the Secretary begins collection activities. 26 U.S.C. § 6015(b). Subsection (c) of § 6015, on the other hand, allows taxpayers who are no longer married, legally separated, or not living together to limit their liability for deficiencies attributable to their spouse. 26 U.S.C. § 6015(c).

equitable relief where there is an underpayment of tax on a correct return.[13]

As originally enacted, § 6015(e)(1) allowed taxpayers denied relief by the IRS under subsections (b) or (c) to petition the Tax Court for relief. In *Ewing v. Commissioner*, 118 T.C. 494 (2002), the Tax Court concluded that § 6015(e)(1) granted it jurisdiction over non-deficiency cases brought under § 6015(f) as well. We reversed the Tax Court's assertion of jurisdiction over § 6015(f) petitions in *Ewing v. Commissioner*, 439 F.3d 1009 (9th Cir. 2006), after finding that the plain language of the statute precluded this interpretation. Congress thereafter amended § 6015(e)[14] to

---

[13] Section 6015(f) provides:

> (f) Equitable relief.–Under procedures prescribed by the Secretary, if–
>
>> (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
>>
>> (2) relief is not available to such individual under subsection (b) or (c),
>
> the Secretary may relieve such individual of such liability.

26 U.S.C. § 6015(f).

[14] Section 6015(e) provides, in pertinent part:

> (e) Petition for review by Tax Court.–
>
>> (1) In general.–In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply, or in the case of an individual who requests equitable relief under subsection (f)–

expressly grant the Tax Court jurisdiction to review petitions for equitable relief under § 6015(f) that have been denied by the IRS, like the petition at issue here. Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, div. C, § 408, 120 Stat. 2920, 3061–62.

In implementing the innocent spouse tax relief enacted by Congress, the Department of the Treasury promulgated a

(A) In general.–In addition to any other remedy provided by law, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section if such petition is filed–

(i) at any time after the earlier of–

(I) the date the Secretary mails, by certified or registered mail to the taxpayer's last known address, notice of the Secretary's final determination of relief available to the individual, or

(II) the date which is 6 months after the date such election is filed or request is made with the Secretary, and

(ii) not later than the close of the 90th day after the date described in clause (i)(I).

. . .

(4) Notice to other spouse.–The Tax Court shall establish rules which provide the individual filing a joint return but not making the election under subsection (b) or (c) or the request for equitable relief under subsection (f) with adequate notice and an opportunity to become a party or proceeding under either such subsection.

regulation establishing the factors to be utilized in analyzing requests for equitable relief. The IRS established a single processing site in Cincinnati, Ohio to handle the claims, known as "The Commissioner's Cincinnati Centralized Innocent Spouse Operation" ("CCCISO"). CCCISO staff screen innocent spouse tax relief requests to determine whether they meet basic eligibility requirements. Applications that do not meet the requirements are closed at screening, and the taxpayer is informed of the decision. If a claim meets basic eligibility requirements, the file is transferred to an examiner to further review the claim and decide whether relief should be granted. When a decision is made, the taxpayer is informed and given thirty days to appeal to the IRS's Office of Appeals. After the administrative appeal is decided, the IRS sends a final determination letter. The taxpayer then has the right to appeal the IRS decision to federal court. The taxpayer has the option of either petitioning the U.S. Tax Court for review, or paying the deficiency and filing a refund claim in federal district court or the Court of Federal Claims.

## II

Petitioner Karen Marie Wilson is a fairly typical applicant for innocent spouse relief. For the first fourteen years of their marriage, her husband Lloyd worked as a self-employed insurance salesman. In 1997, Lloyd started a venture capital business that dramatically increased his income: he went from earning approximately $30,000 a year as a salesman to netting $20,000 a month. The new business, however, was a Ponzi scheme. In May of 1999, the Securities and Exchange Commission issued a cease-and-desist order that abruptly ended Lloyd's enterprise. Significant tax liabilities were

levied. Claiming ignorance of his fraudulent actions, Karen applied for innocent spouse relief.

Wilson contends that she "did not understand the nature of her husband's business–she believed it was legitimate and had no knowledge about its operations or fraudulent nature." Although Wilson had prepared the couple's joint personal tax returns in previous years, she did not prepare the 1997, 1998, or 1999 returns at issue in this appeal, because Lloyd's new business made the necessary accounting much more complicated than it had been previously. Instead, the couple hired an accountant who prepared the Wilsons' 1997 and 1998 joint returns without reporting the substantial income Lloyd was sending to offshore accounts. In 1999, a new accountant advised the Wilsons to amend their returns for 1997 and 1998 and file a return for 1999 to report the offshore income; the total tax liability reported on these returns was $540,000. Wilson signed these returns and acknowledges that she was aware of the balance due on them. She contends, however, that she believed the tax debt would be paid when the returns were filed because her husband was "still in business during this time."

The taxes Wilson and her husband owed, however, were never paid, and in early 2002, Wilson filed a Request for Innocent Spouse Relief with the IRS. Though Wilson was still married to Lloyd at the time of this filing, they were allegedly estranged and living together only because Wilson lacked the financial resources to move out of the family home. In her application for relief, Wilson described her financial status as one "of survival," given her $11 hourly wage rate as a clerk at a commercial real estate company. Wilson reported her monthly expenses as exceeding her monthly income by $76. Because Lloyd had not sought new

work after the demise of his venture capital business, Wilson stated that she did not know "what my spouse is able to provide." She also noted that she and Lloyd were "not communicating well" and were not able to "come to an agreement . . . in this matter." Wilson did not allege any domestic abuse.

The CCCISO denied Wilson relief. The CCCISO found that Wilson lacked reasonable belief that the outstanding taxes would be paid, because "there was a balance owing from 1998 when the 1999 return was filed." The agency also concluded that since the business income on which the taxes were owed belonged to both Wilson and her husband, she could not "be relieved of [her] own liability."

Wilson appealed the denial to the IRS's Office of Appeals. On February 11, 2004, an appeals officer sent Wilson a letter detailing the factors that favored her petition for relief, the factors that weighed against her petition for relief, and the factors that were neutral. The reasons that the officer believed justified a denial of relief included: (1) the fact that Wilson was still married and living with her husband; (2) her awareness of past taxes owed at the time she signed the returns; (3) her failure to disclose information about the income of other household members; and (4) that without substantiation, it appeared that half of the business and rental income on her tax returns was attributable to her. The appeals officer invited Wilson to submit specific additional information that could change the assessment of each of these factors.

Wilson did not submit any additional information. However, on March 3, 2004, she called the appeals officer to discuss her case and disclosed that although she and her

husband still lived in the same house, she had begun divorce proceedings. In response, the officer delayed the hearing he had scheduled in his initial letter to Wilson for three months. The hearing, however, was never held, and on July 14, 2004, the officer sent a final letter asking to submit her "plan in dealing with [her] request for relief of the liability" by August 18, 2004. Wilson did not respond, and he closed the case, denying her relief. The Commissioner issued a final notice of determination on September 3, 2004, informing Wilson that her request for relief had been denied by the IRS.

Wilson petitioned the Tax Court for review of the administrative denial of her claim for equitable innocent spouse relief. The Tax Court initially heard testimony from Wilson in September 2005, but "[w]hen complicated facts and legal issues unfolded, [the court] arranged for *pro bono* counsel" to help Wilson prepare her case.[15] Wilson later submitted new exhibits that included detailed financial information and notified the court of her divorce, which had become final in April of 2007.

In 2008, the Tax Court reopened the record and held a second trial where Wilson again testified. The government made a continuing evidentiary objection to the introduction of any new evidence at both trials, arguing that review of the denial of equitable innocent spouse relief should be made solely on the basis of the record developed before the IRS.

---

[15] The proceedings were then paused due to uncertainty regarding the Tax Court's jurisdiction to hear § 6015(f) petitions for relief. Proceedings resumed after Congress, as previously noted, amended § 6015 to explicitly grant the tax court jurisdiction to review § 6015(f) petitions in 2006. *See* Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, § 408, 120 Stat. 2922.

The Tax Court overruled these objections, relying on precedent from other Tax Court decisions.

The Tax Court determined that Wilson was entitled to relief under § 6015(f). It explained that the Tax Court's decisions in *Porter v. Commissioner* (*Porter I*), 130 T.C. 115 (2008), and *Porter v. Commissioner* (*Porter II*), 132 T.C. 203 (2009), established that the Tax Court should proceed de novo when reviewing § 6015(f) claims for innocent spouse.

After conducting a de novo review of Wilson's appeal, the Tax Court determined that Wilson was entitled to equitable relief. With the expanded evidentiary record, the Tax Court found five factors favoring relief. The court determined that Wilson's marital status, under a de novo review of the record, weighed in her favor as she had finalized her divorce before the second trial. This factor was not favorable to Wilson during the administrative phase of her case. The Court agreed with the Commissioner that Wilson had not received a significant benefit from her husband's unpaid liability, a factor weighing in her favor.

In a thorough examination of the facts, the Tax Court concluded that Wilson had no knowledge or reason to know of the tax underpayment. The Court determined that credible evidence supported her testimony that she was ignorant of the SEC Cease and Desist Order. In addition, it concluded that even if she had known, it would have been reasonable for her to assume the couple had sufficient assets to satisfy the tax liability. No evidence had been submitted or considered during Wilson's brief exchanges with the agent about this factor during the administrative process.

The Tax Court also concluded that Wilson would suffer significant economic hardship if the tax liability were imposed. The Tax Court found that her monthly income exceeded her expenses by $114, and that paying a $540,000 tax debt would cause her to be unable to meet reasonable basic living expenses. Because Wilson had not submitted detailed expense statements to the IRS, the Commissioner had found against her on this factor.

The Tax Court also concluded that the tax liability was solely attributable to Wilson's husband. The Commissioner had concluded that because Wilson performed some clerical duties for the business, she should be allocated 50% of the fault. However, the Tax Court found that she was completely ignorant of his business activities and had no input into any business decisions.

Thus, the Tax Court found five factors weighing in favor of relief, four of which had been rejected by the Commissioner. The court acknowledged that had its review been restricted to the administrative record, these factors would have weighed against Wilson.

The IRS filed a timely notice of appeal to this Court. It did not contest the validity of the Tax Court findings. It only argues that the Tax Court should not have been permitted to consider new evidence and that its review should be confined to the administrative record under an abuse of discretion standard of review. Because the Tax Court's scope and standard of review in § 6015(f) cases are questions of law, we review the Tax Court's decision de novo. *Keller v. Comm'r*, 568 F.3d 710, 716 (9th Cir. 2009).

**III**

The first question in this case is whether the Tax Court properly considered new evidence in considering Wilson's appeal.  Resolution of the issue turns on statutory analysis.

**A**

The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil*, 519 U.S. 337, 340 (1997).  This often requires "examin[ing] not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy."  *Children's Hosp. & Health Ctr. v. Belshe*, 188 F.3d 1090, 1096 (9th Cir. 1999).  If the plain meaning of the statute is unambiguous, that meaning controls.  If the statutory language is ambiguous, then we consult legislative history.  *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999).  We need not rely on legislative history as an aid to interpretation unless "the legislative history clearly indicates that Congress meant something other than what it said."  *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 877 (9th Cir. 2001) (en banc) (citing *Perlman v. Catapult Entm't, Inc.* (*In re Catapult Entm't, Inc.*), 165 F.3d 747, 753 (9th Cir. 1999)).

Section 6015(e) states that "an individual who requests equitable relief under subsection (f)" can "petition the Tax Court (and the Tax Court shall have jurisdiction) to *determine* the appropriate relief available to the individual under this section."  26 U.S.C. § 6015(e)(1) (emphasis added).  A determination of whether innocent spouse relief is appropriate under § 6015(f), meanwhile, requires consideration of "all the

facts and circumstances" relevant to a taxpayer's petition. 26 U.S.C. § 6015(f)(1). In the absence of any limiting language directing the Tax Court to consider only that evidence before the Commissioner during the administrative phase of review, "determining" the validity of a taxpayer's request for innocent spouse relief in light of "all the facts and circumstances" suggests a de novo scope of evidentiary review in § 6015(f) cases.

The Eleventh Circuit, the only other circuit court to have considered the scope of the Tax Court's review in § 6015(f) cases, reached the same conclusion in *Commissioner v. Neal*, 557 F.3d 1262 (11th Cir. 2009). Reviewing the language of subsections (e) and (f), the *Neal* Court found that Congress intended the Tax Court to consider evidence outside the administrative record. 557 F.3d at 1265. As that Court explained:

> Section 6015(e) expressly grants jurisdiction to the Tax Court to "determine the appropriate relief available to the individual." 26 U.S.C. § 6015(e). Section 6015(e) does not say the taxpayer "may appeal" the Commissioner's § 6015(f) decision to the Tax Court or that the Tax Court may hear an appeal. Rather, § 6015(e) authorizes the taxpayer to seek § 6015(f) relief from the Tax Court.

*Id*.

The *Neal* Court also found Congress's use of the words "petition" and "determine" rather than "appeal" in § 6015(e)'s jurisdictional grant significant. Although *appeals to determine* whether the IRS made an appropriate decision

about a request for innocent spouse relief may confine the Tax Court to considering only the administrative record, *petitions to determine* whether such relief is warranted suggest "something different"– namely, an authorization to proceed de novo. *Id.* at 1276; *see also Friday v. Comm'r*, 124 T.C. 220, 222 (2005) ("A petition for a decision as to whether relief is appropriate under section 6015 is generally not a 'review' of the Commissioner's determination in a hearing but is instead an action begun in this Court.").

**B**

The structure of the statute supports this conclusion, as well. Section 6015(e)'s jurisdictional grant to determine whether equitable relief is warranted in a § 6015(f) case must be read alongside subsection (f)'s mandate to consider the totality of the circumstances before making an equitable relief determination. "Taking into account all the facts and circumstances" is not possible if the Tax Court can review only the evidence available at the time of the Commissioner's prior determination. 26 U.S.C. § 6015(f)(1).

Confining the Tax Court's review to the administrative record before the Commissioner would also introduce significant inconsistencies in different types of § 6015(f) cases brought before the court. For instance, under § 6015(e)(4), a non-petitioning spouse may intervene in a § 6015(f) Tax Court proceeding and thereby introduce evidence outside the administrative record. 26 U.S.C. § 6015 (e)(4) ("The Tax Court shall establish rules which provide the individual filing a joint return but not making . . . the request for equitable relief under subsection (f) with adequate notice and an opportunity to become a party."); *see also Porter II*, 132 T.C. at 219–220 (Gale, J., concurring) (finding the

explicit provision permitting intervention by a non-petitioning spouse to "entail the distinct likelihood that new evidence will surface in the Tax Court proceeding."). By "expressly providing for intervenors in section 6015(f) . . . cases . . . Congress contemplated a new record made initially in the reviewing court." *Porter II*, 132 T.C. at 220 (Gale, J., concurring). Moreover, the right to intervene provided by § 6015(e)(4) would be eviscerated without the ability to present new evidence. Because the scope of the Tax Court's review in § 6015(f) cases should be consistent regardless of whether a spouse decides to intervene, § 6015(e) must be interpreted to allow consideration of evidence outside the administrative record in all § 6015(f) petitions to the Tax Court.

An intervention by a non-petitioning spouse is not the only type of § 6015(f) case where the Tax Court can proceed de novo. There are two other contexts where a de novo scope of review is not only permitted, but expected. First, when a taxpayer requests § 6015(f) relief but the Commissioner fails to make a determination regarding the request within six months, the taxpayer may petition the Tax Court to render the determination. 26 U.S.C. § 6015(e)(1)(A). Such a determination would obviously occur upon de novo review of a record compiled at the Tax Court, because in this context, there would be no administrative record to consider. The Tax Court also proceeds de novo when confronted with taxpayers who raise relief under § 6015(f) as an affirmative defense in § 6015(b) and § 6015(c) deficiency cases. *Comm'r v. Neal*, 557 F.3d at 1272. As the *Neal* Court concluded, "without trials *de novo* under § 6015(e), substantially identical § 6015(f) claims would be treated differently." *Id.* at 1272.

The government dismisses these procedural anomalies as either justified or resolvable through a remand to the Commissioner to make an initial administrative determination. The text of § 6015(e) suggests otherwise. Section 6015(e) not only makes no mention of remand, it instructs the Tax Court to proceed de novo when reviewing certain § 6015(f) petitions. Applicable precedent, moreover, restricts the Tax Court from remanding § 6015(f) cases to the Commissioner for further administrative consideration. *Friday v. Comm'r*, 124 T.C. 220, 222 (2005). "A de novo scope of review" appears to be the "*only* means by which [the Tax Court] can supplement an insufficient record" in § 6015(f) cases. *Porter II*, 132 T.C. at 225 (Wells, J., dissenting).

## C

The government also contends that the Administrative Procedure Act ("APA") requires the Tax Court to consider only the administrative record as it existed at the time of the Commissioner's equitable relief determination. *See* 5 U.S.C. § 706(2)(A) (authorizing reviewing courts to set aside agency actions found to be "arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law.").

## 1

Where Congress has enacted a special statutory review process for administrative action, that process applies to the exclusion of the APA. *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988); *Steadman v. SEC*, 450 U.S. 91, 105 (1981) ("[T]he general provisions of the APA are applicable only when Congress has not intended that a different standard be used in the administration of a specific statute." (Powell, J.,

dissenting)); *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 497 (9th Cir. 2011) (noting that the APA applies only where there is no other adequate remedy in court); *Wash. Toxics Coal. v. EPA*, 413 F.3d 1024, 1034 (9th Cir. 2005).

As we have discussed, Congress has enacted extensive special provisions providing for judicial remedies in innocent spouse taxpayer relief cases. Section 6015(e) explicitly directs the Tax Court to make a "determination" regarding whether relief is available to a taxpayer under § 6015(f). If Congress had merely intended the gap-filling APA procedures to apply, it would have been unnecessary to address Tax Court remedies at all. In the tax context, as well as in others, "a precisely drawn, detailed statute pre-empts more general remedies." *Hinck v. United States*, 550 U.S. 501, 506 (2007) (internal quotations and citations omitted). The extensive legislative history of these provisions demonstrates that the special procedures enacted by Congress displace application of the APA in innocent spouse tax relief cases, and the APA does not apply.[16]

The administrative structure addressing innocent spouse taxpayer also supports the conclusion that the APA does not apply. As we have explained, all claims are first screened by administrative personnel at the CCCISO center. If a claim

---

[16] Further, although we need not reach the question here, there is considerable doubt as to whether the APA applies to the Tax Court at all. The Tax Court has held that the APA does not govern its proceedings. The Fourth Circuit has agreed. *See O'Dwyer v. Comm'r*, 266 F.2d 575, 580 (4th Cir. 1959) ("[T]he Tax Court is not subject to the Administrative Procedure Act."). The Eighth Circuit has held to the contrary as to review under § 6330(d). *Robinette v. Comm'r*, 439 F.3d 455, 459–60 & n.4 (8th Cir. 2006).

survives screening, it is transferred to an examiner. If the examiner denies relief, then the taxpayer may appeal to the IRS's Office of Appeals. There is no formal administrative procedure for a contested case at which the taxpayer may present her case before an administrative law judge. At no time during the process is the taxpayer afforded the right to conduct discovery, present live testimony under oath, subpoena witnesses for trial, or conduct cross-examination.

Rather, in this statutory scheme, it is before the Tax Court that the taxpayer has the vehicle to conduct discovery, *see* 26 U.S.C. § 6902(b), subpoena witnesses and documents, 26 U.S.C. § 7456(a)(1), and submit evidence at trial, Tax Ct. R. 181. Absent the availability of the Tax Court processes, an innocent spouse has no means to obtain or compel production of necessary records from the non-innocent spouse. The structure of administrative process indicates that the usual APA procedures do not apply.

**2**

Even assuming, arguendo, that the APA applies here, the usual exceptions apply so as to permit the Tax Court to consider additional evidence. Although typically APA review of an agency decision is limited to the administrative record, *see Camp v. Pitts*, 411 U.S. 138, 142 (1973), there are, as the government concedes, exceptions to this general rule. We have acknowledged that a "reviewing court may require supplementation of the administrative record if it is incomplete." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (citing *Camp v. Pitts*, 411 U.S. at 142–43). Though exceptions to the APA's record rule are to be "narrowly construed and applied," they can be necessary "to plug holes in the administrative record." *Id.*

The ability to supplement the administrative record is particularly important in equitable relief cases, which require a fact-intensive inquiry of sensitive issues that may not come to light during the administrative phase of review.[17]   The threshold requirements for innocent spouse relief may present a complicated and contradictory dilemma for the taxpayer. The innocent spouse must show that he or she is ignorant of the spouse's tax misdeeds, yet must marshal documentary support to prove it.   The taxpayer often has limited or no access to critical records.   The innocent taxpayer who has been misled by a spouse often may not understand the full extent or scope of the erring spouse's misdeeds. Compounding these difficulties is an administrative system where the only opportunity to present a case is through telephonic interviews with an agent in a remote location.

---

[17] Although it is not a factor in this case, domestic abuse is a serious problem in innocent spouse taxpayer cases.  As the National Taxpayer Advocate  reported to Congress last year, facts that suggest a purported innocent spouse was victimized by the other spouse "have real consequences for tax administration," yet often are not sufficiently recognized or addressed by the IRS.  National Taxpayer Advocate, *2011 Annual Report to Congress* 323 (2011).  Innocent spouse relief has been identified as "perhaps the most common situation in which the problem of abuse comes to IRS attention," yet the agency's "[d]ocument-[o]riented [s]ystems and [e]xpectations can be [o]bstacles to [r]elief for [v]ictims of [d]omestic [v]iolence and [a]buse" when they "cause employees to overlook the availability of reliable information that would lead to the correct resolution of tax matters." *Id.* at 325, 327, 323.  For instance, in *Stephenson v. Commissioner*, the IRS denied a taxpayer who alleged she was a victim of spousal abuse equitable innocent spouse relief because she lacked documentary support of the abuse.  T.C. Memo. 2011-16 at 25 (Jan. 20, 2011).  The Tax Court granted relief, however, after finding that the taxpayer "credibly testified to specific allegations of abuse." *Id*.

In this case, supplementation of the administrative record through testimony given by Wilson was critical to determining whether the IRS considered all relevant factors in denying her § 6015(f) petition for innocent spouse relief. As the Tax Court noted in its decision, because "[t]here was little information in the administrative record that shed[] any light" on the portion of the unpaid liabilities attributable to Wilson, the IRS Appeals Officer attributed 50 percent of the outstanding tax liability to her. Wilson's testimony before the Tax Court, however, revealed a "lack of business sophistication and limited education" as well as "no understanding" of the nature of her husband's business scheme. In light of her testimony, the court found the couple's tax liability "entirely attributable to Lloyd." Without the trial testimony, the Tax Court would not have had a sufficient record to comply with its duty, under § 6015(e), "to determine the appropriate relief available" to Wilson under § 6015(f). Notably, the Commissioner does not dispute these findings.

This case also demonstrates that restricted access to important documents can be a significant barrier to establishing an adequate administrative record. Although Wilson attempted to comply with the documentation requests made by the IRS appeals officer handling her case, she could not submit a complete set of materials due to her husband's interference. When she tried to make photocopies of the joint returns for the tax years at issue in this appeal, her husband physically prevented her from leaving the house with the materials. As Wilson's experience demonstrates, "[a] taxpayer who interacts with the IRS from a position of near-total ignorance of her or his tax filing and payment history, with no control over what was done in her or his name, is at

a serious disadvantage." National Taxpayer Advocate, *2011 Annual Report to Congress* 324 (2011).

Many of the taxpayers who seek innocent spouse relief share Wilson's limited educational background, lack of access to essential documents, and inability to hire counsel.[18] Taxpayers in Wilson's position may have understandable trouble comprehending, and thus fully complying with, the IRS's process in considering requests for equitable spouse relief or establishing a complete record with the agency. Allowing the Tax Court to review a supplemented and up-to-date record under these circumstances is entirely consistent with the statutory structure of § 6015 and Congress's direction that the Tax Court determine the appropriate relief.

Thus, even if the APA applies, the Tax Court appropriately considered additional evidence.

## IV

### A

The plain language of § 6015(e), as amended, also confirms that the Tax Court should apply a de novo standard of review when considering appeals pursuant to § 6015(f). Section 6015(e) explicitly authorizes the Tax Court to make a "determination" regarding whether relief is available to a taxpayer under § 6015(f). In order "to determine the appropriate relief available," the Tax Court must review § 6015(f) decisions de novo. There is nothing in § 6015(e) to

---

[18] Over half of all innocent spouse relief cases, for instance, involve *pro se* litigants. National Taxpayer Advocate, *2011 Annual Report to Congress* 589 (2011).

indicate that the Tax Court should defer to the Commissioner's prior decisions in § 6015(f) petitions.

The government contends that the appropriate standard of review is dictated not by § 6015(e), but by § 6015(f). As the government argues, the Tax Court can review petitions for relief under § 6015(f) only for an abuse of discretion because the permissive language of § 6015(f) expressly allows the Commissioner to grant or deny tax relief at his discretion. Taxpayers are allowed to "request" relief under § 6015(f), which "the Secretary may" grant. In contrast, the government points out, under § 6015(b) and (c), the taxpayer "elects" relief, which "shall" be granted if certain statutory requirements are met. The government suggests that the clear discretionary authority granted to the IRS under § 6015(f) would be eliminated if the Tax Court is permitted to review § 6015(f) petitions de novo.

The statutory provision that controls the Tax Court's review of § 6015(f) petitions, however, is not § 6015(f), but § 6015(e). Section 6015(f) addresses only the *Secretary's* role in considering petitions for equitable relief. The Tax Court's role in reviewing requests for relief is dictated solely by § 6015(e), which does not establish mere review of agency action, but explicitly calls for a *determination* by the Tax Court. This determination occurs either after a taxpayer receives "notice of the Secretary's final determination of relief" or six months after a request for equitable relief "is filed or request is made with the Secretary." § 6015(e)(1)(A). Because § 6015(e) contemplates a situation where the Tax Court may hear a petition for relief under § 6015(f) without any administrative record at all, logic dispels the notion that § 6015(f) appeals to the Tax Court are reviewable only for an abuse of discretion.

As the government concedes, a de novo scope of evidentiary review is incompatible with an abuse of discretion standard. The government points out that "the overarching problem with the Tax Court's trial *de novo* approach in *Ewing II* and *Porter I* . . . is that the court decided that the Commissioner abused his discretion in denying relief based on evidence that was not before him. Such an approach . . . is 'illogical and inappropriate'" (citing *Ewing v. Comm'r*, 122 T.C. at 72 (Chiechi, J., dissenting)). We agree. The Tax Court must be able to compile a de novo record if it is to consider "all the facts and circumstances" when deciding whether a taxpayer is entitled to relief from joint liability under § 6015(f), but it is pointless to do so if it can only review the Commissioner's denial of equitable relief for an abuse of discretion. The only way for the Tax Court to proceed de novo when hearing petitions for relief under § 6015(f) is by applying both a de novo standard and scope of review.

Finally, the nature of equitable relief also favors de novo review. Administrative agencies are "creatures of statute, bound to the confines of the statute that created them, and lack the inherent equitable powers that courts possess." *U.S. Fidelity and Guar. Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1135 (9th Cir. 2011). The award of equitable spouse relief often turns on credibility, which is best tested in the crucible of trial rather than in a bureaucratic office in which the officer is unlikely even to meet the claimant. In this unique context, de novo review of the agency decision is particularly appropriate.

**B**

The structure of the innocent taxpayer provisions buttresses the conclusion that a de novo standard of review is appropriate. Indeed, to hold otherwise would result in inconsistent application of the three types of innocent spouse relief available under § 6015.

A jurisdictional grant to the Tax Court "to determine" whether equitable innocent spouse relief is appropriate strongly indicates that the Tax Court should proceed de novo in considering such claims. *See Comm'r v. Neal*, 557 F.3d at 1276 (comparing statutory language in § 6330(d)(1), which permits a taxpayer to "appeal" an Appeal Officer's determination to the Tax Court, to "§ 6015(e), which does not use the word 'appeal' but instead authorizes the Tax Court to 'determine' the appropriate relief."). In the special context of Tax Court jurisprudence, the word "determine" is frequently associated with de novo review. Under § 7436(a), for instance, the Tax Court is authorized to "determine" whether the Commissioner's assessment of a taxpayer's employment status is correct, and legislative reports confirm that such determination is to occur after a trial de novo. *See Ewing v. Comm'r*, 122 T.C. 32, 38–39 (2004)[19] (citing H.R. Rep. No. 105-148, at 639 (1997); S. Rep. No. 105-33, at 304 (1997); H. Conf. Rep. 105-220, at 734 (1997)). Similarly, the Tax Court has always made "determinations and redeterminations" regarding overpayments de novo. *Porter I*, 130 T.C. at 119 (citing *O'Dwyer v. Comm'r*, 266 F.2d 575, 580 (4th Cir.

---

[19] As previously noted, this case was overturned by *Commissioner v. Ewing*, 439 F.3d 1009 (9th Cir. 2006), which was in turn superseded by statute. *See* Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, § 408, 120 Stat. 2922.

1959); *Greenberg's Express, Inc. v. Comm'r*, 62 T.C. 324, 327–328 (1974); *Clapp v.Comm'r*, 875 F.2d 1396, 1403 (9th Cir. 1989); *Jones v. Comm'r*, 97 T.C. 7, 18 (1991)). Given the Tax Court's long "history of conducting trials *de novo* in other areas where Congress by statute has authorized the Tax Court to make 'determinations' or redeterminations,'" it can be "reasoned that Congress was well aware of the Tax Court's well-established interpretation of 'determine' when it enacted § 6015 . . . ." *Comm'r v. Neal*, 55 F.3d at 1270.

The government argues that "determine" is not a term of art connoting a de novo scope of review and gives several examples where statutory text employs variations of the word "determine" but clearly mandates review on the administrative record. It is true that "determine" does not automatically mandate de novo review whenever it appears in the Tax Code. However, the history of the Tax Court's application of the word "determine" as it appears in § 6015(e) evidences legislative intent to impose de novo review of stand-alone § 6015(f) petitions to the Tax Court.

Although there was doubt as to whether the Tax Court could review denials of equitable relief under § 6015(f) until 2006, it was always clear that § 6015(e) gave the court jurisdiction over denials of relief in deficiency cases under §§ 6015(b) and (c). *See Comm'r v. Ewing*, 439 F.3d at 1013 ("The plain language of the statute clearly indicates that the Tax Court has jurisdiction over a petition only when a deficiency has been asserted and the taxpayer has elected relief under subsection (b) or (c)."). The Tax Court has "always applied a de novo scope and standard of review in determining whether relief is warranted under subsections (b) and (c)." *Porter II*, 132 T.C. at 210 (citing as an example *Alt v. Comm'r*, 119 T.C. 306, 313–16 (2002), *aff'd* 101 Fed.

Appx 34 (6th Cir. 2004)). Given this history of de novo review in the context of §§ 6015(b) and (c) petitions for relief, it is significant that in 2006 Congress explicitly amended § 6015(e) to permit the Tax Court to review petitions for relief under subsection (f) without making any change to its direction to "determine the appropriate relief available" in such petitions. *See* Tax Relief and Health Care Act of 2006 § 408, 120 Stat. at 3062. When Congress decided to keep the word "determine" in § 6015(e), it did so with full awareness of the Tax Court's history of holding trials de novo in cases arising out of §§ 6015(b) and (c). Given this history, the Tax Court should apply the same standard of review in all § 6015 cases, regardless of whether they are brought under subsection (b), (c), or (f).

## V

The text, structure, and legislative history of § 6015(e) direct the Tax Court to proceed de novo when determining whether a taxpayer is eligible for relief under § 6015(f). The Tax Court therefore did not err in holding a trial de novo and applying a de novo standard of review in this case.

**AFFIRMED.**

---

BYBEE, Circuit Judge, dissenting:

The question presented in this case is one fundamental to administrative law: What is the scope of review—and, concomitantly, the standard of review—of the Tax Court's review of the Secretary of the Treasury's decision to deny equitable relief to an innocent spouse? Under 26 U.S.C.

§ 6015(f), if, "taking into account all the facts and circumstances, it is inequitable to hold [an innocent spouse] liable for any unpaid tax or any deficiency[,] . . . the Secretary may relieve such individual of such liability." The Tax Court held, and the majority affirms, that the Tax Court may review the Secretary's decision by "a de novo standard of review as well as a de novo scope of review." *Porter v. Comm'r (Porter II)*, 132 T.C. 203, 210 (2009) (en banc); *see* Maj. Op. at 3 ("[T]he Tax Court properly considered new evidence outside the administrative record. . . . [and] applied a de novo standard of review . . . ."). The Tax Court so concludes, not because the Secretary has failed to consider the administrative record or abused his discretion, but because the Administrative Procedure Act does not apply to the Tax Court's review of the Secretary's actions. *See Porter v. Comm'r (Porter I)*, 130 T.C. 115, 117–19 (2008) (en banc) (holding that the APA does not, and never has, applied to the Tax Court's proceedings).

The question is of more than passing interest. It goes to the heart of the place of the Tax Court in our administrative system. The question has splintered the Tax Court, which has proceeded along three different paths, dragging four circuit courts with them in the process. The Tax Court initially held that it would review the Secretary's exercise of discretion under § 6015(f) for abuse of discretion. *Jonson v. Comm'r*, 118 T.C. 106, 125 (2002), *aff'd on other grounds*, 353 F.3d 1181 (10th Cir. 2003). The D.C. and Fifth Circuits confirmed that position. *Mitchell v. Comm'r*, 292 F.3d 800, 807 (D.C. Cir. 2002) ("As the decision whether to grant this equitable relief is committed by its terms to the discretion of the Secretary, the Tax Court and this Court review such a decision for abuse of discretion."); *Cheshire v. Comm'r*, 282 F.3d 326, 337–38 (5th Cir. 2002) (reviewing innocent

spouse relief under § 6015(c) for clear error by the Tax Court and § 6015(f) for abuse of discretion by the Secretary).

Then, a divided Tax Court changed its mind and held that it would use a de novo scope of review—including trial de novo—but an abuse-of-discretion standard of review. *Ewing v. Comm'r (Ewing II)*, 122 T.C. 32, 43–44 (2004) (en banc) ("[O]ur determination whether petitioner is entitled to equitable relief under section 6015(f) is made in a trial de novo and is not limited to matter [*sic*] contained in [the Commissioner's] administrative record, and . . . the APA record rule does not apply to section 6015(f) determinations in this Court."); *id*. at 50 (Thornton, J., concurring) ("Since its enactment in 1946, the APA has never governed proceedings in this Court (or in its predecessor, the Board of Tax Appeals)."); *id*. at 71 (Chiechi, J., dissenting) (agreeing with the majority that "the APA [does not] control[] the proceedings"). *But see id.* at 61 (Halpern, J., dissenting) ("[T]he APA judicial review provisions apply to section 6015(f) cases as well as deficiency cases."). That position was confirmed by a divided Eleventh Circuit. *Comm'r v. Neal*, 557 F.3d 1262, 1264 (11th Cir. 2009) ("[T]he Tax Court did not err in refusing to limit its consideration to the administrative record and in conducting a trial *de novo* in this § 6015 case."); *id.* at 1287 (Tjoflat, J., dissenting) ("[T]he court has given the Tax Court the authority to second-guess the Commissioner at its whim.").

Finally, a divided Tax Court changed its mind yet again and decided that it was entitled to both a de novo scope of review and a de novo standard of review. *Porter II*, 132 T.C. at 206–10 (rejecting an abuse-of-discretion standard in favor of de novo review on an open record); *id.* at 221 (Gale., J., concurring) ("Given the statute's failure to specifically

address the standard of review, . . . the better interpretation of section 6015 is that it provides for a de novo standard of review in all section 6015 cases . . . ."). *But see id*. at 225 (Wells, J., dissenting) ("[T]he correct standard to use in reviewing section 6015(f) cases in this Court is abuse of discretion."); *id.* at 232 (Gustafson, J., dissenting) (defending Tax Court precedent calling for "an abuse-of-discretion *standard* of review [and] a de novo record *scope* of review"). The majority confirms this in today's ruling. Maj. Op. at 3.

The majority's position not only departs from the D.C., Fifth, and Eleventh Circuits, but also its reasoning is inconsistent with the Eighth Circuit's decision in *Robinette v. Commissioner*. 439 F.3d 455, 459–61 (8th Cir. 2006) (rejecting the Tax Court's claim to de novo scope of review in proceedings under 26 U.S.C. § 6330 and concluding that the Commissioner's decision was subject to abuse of discretion review under APA § 706(2)(A)); *see also Keller v. Comm'r*, 568 F.3d 710, 718 (9th Cir. 2009) (citing *Robinette* with approval).

I cannot follow the majority in this convoluted path. Because the Tax Court is a "reviewing court" for purposes of the judicial review provisions of the APA, I am persuaded that its scope of review is the administrative record before the IRS, and that the Tax Court can only review the Secretary's exercise of discretion for an abuse of discretion pursuant to 5 U.S.C. § 706(2)(A). I respectfully dissent.

## I. THE APA AND THE TAX COURT

Let us begin with some first principles of administrative law. The Internal Revenue Service ("IRS"), located within the Department of the Treasury, is an "authority of the

Government of the United States" and, thus, an "agency" subject to the provisions of the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 701(b)(1); *see also id.* § 551(1). That means that any person "aggrieved" by "final agency action" or "[a]gency action made reviewable by statute," *id.* § 704, is "entitled to judicial review . . . in a court of the United States," *id.* § 702. In general, "[t]he form of proceeding for judicial review is the special statutory review proceeding," *id.* § 703, typically found in the agency's enabling or organic act. A "special statutory review proceeding" is Congress's instructions for judicial review of an agency's actions. Such judicial review statutes will frequently identify the reviewing court, confer jurisdiction, provide venue, and waive sovereign immunity; although, any particular organic act may not address each of these elements. *See, e.g.*, 15 U.S.C. § 45(c) (judicial review of Federal Trade Commission cease-and-desist orders). "Special statutory review proceeding" statutes may also specify the scope of review and the standard of review. *See, e.g.*, 30 U.S.C. § 1276(a)(1) ("Any action subject to judicial review under this subsection shall be affirmed unless the court concludes that such action is arbitrary, capricious, or otherwise inconsistent with law."); *id.* § 1276(b) ("The court shall hear such petition or complaint solely on the record made before the Secretary. Except as provided in subsection (a) of this section, the findings of the Secretary if supported by substantial evidence on the record considered as a whole, shall be conclusive."). "[I]n the absence or inadequacy" of such special statutory review provisions, the APA supplies a default "action for judicial review" in a "court of competent jurisdiction." 5 U.S.C. § 703. *See Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988); *ANA Int'l Inc. v. Way*, 393 F.3d 886, 890 (9th Cir. 2004). There is a strong presumption favoring the availability of judicial review. *Abbott Labs. v.*

*Gardner*, 387 U.S. 136, 140–41 (1967); *Helgeson v. Bureau of Indian Affairs*, 153 F.3d 1000, 1003 (9th Cir. 1998).

Unless the special statutory review provided for in the agency's enabling act specifies a different scope of review, § 706 of the APA supplies both the scope of review and the standard of review. *See* 5 U.S.C. § 559 (stating that the APA, including its chapter on judicial review, "do[es] not limit or repeal additional requirements imposed by statute or otherwise recognized by law"); *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1194 (9th Cir. 2000) ("[Section] 706 of the APA functions as a default judicial review standard."). Section 706 defines the scope of review as the "whole record" before the agency, while the standard of review depends on the nature of the issue before the court. In most cases, the reviewing court may "hold unlawful and set aside agency action, findings, and conclusions" if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In rare cases, however, a court may set aside agency action if it is "unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court." *Id.* § 706(2)(F).[1] Except when the reviewing court is authorized to conduct a trial de novo, the court's review is confined because "[t]he court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

---

[1] One very obvious example of a reviewing court with the power to conduct a trial de novo is the district courts' review of Freedom of Information Act claims. *See* 5 U.S.C. § 552(a)(4)(B) ("[T]he [district] court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions . . . .").

The question before us is not the scope of *our* review of the Tax Court, but the scope of review and the standard of review of the Tax Court's review of the Commissioner's equitable relief decisions under 26 U.S.C. § 6015(f). Whatever status the Tax Court once enjoyed as the Board of Tax Appeals *vis-a-vis* the Commissioner, today it is clearly a "court of the United States" for purposes of the APA, 5 U.S.C. § 702, and "the reviewing court" in the first instance, *id.* § 706, for review of IRS actions.

## A. The Constitutional Status of the Tax Court

The status of the Tax Court has shifted over time. Created in 1924 as the Board of Tax Appeals (the "Board"), the Board was an independent agency within the executive branch that heard appeals from IRS deficiency determinations. Revenue Act of 1924, Pub. L. No. 68-176, § 900, 43 Stat. 253, 336–38; Revenue Act of 1926, Pub. L. No. 69-20, §§ 1000–05, 44 Stat. 9, 105–11; *see also* Harold Dubroff, *The United States Tax Court: An Historical Analysis—Part II: Creation of the Board of Tax Appeals—The Revenue Act of 1924*, 40 Alb. L. Rev. 7, 53–58 (1976). Thus, the Board was an executive branch agency established to review, through adjudication, the decisions of another executive branch agency. *See* 5 U.S.C. § 701(b)(1) ("'[A]gency' means each authority of the Government of the United States, whether or not it is within or subject to review by another agency . . . ."); *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 151 (1991) (discussing the "unusual regulatory structure" of "separat[ing] enforcement and rulemaking powers from adjudicative powers, assigning these respective functions to two *different* administrative authorities"). The Board's decisions could be appealed to federal district court, where

the court was to assume the correctness of the Board's decisions.   Revenue Act of 1924, Pub. L. No. 68-176, § 900(g), 43 Stat. 253, 337 ("In any proceeding in court . . . [or] any suit or proceeding by a taxpayer to recover any amounts paid in pursuance of a decision of the Board, the findings of the Board shall be *prima facie evidence* of the facts therein stated.") (emphasis added).

The legal status of the Board was not in doubt: "The Board of Tax Appeals is not a court.  It is an executive or administrative board, upon the decision of which the parties are given an opportunity to base a petition for review to the courts after the administrative inquiry of the Board has been had and decided." *Old Colony Trust Co. v. Comm'r*, 279 U.S. 716, 725 (1929).  Nor was the scope of the Board's review in question: for deficiency proceedings, its scope of review was "immediate redetermination of the liability" through "a complete hearing *de novo*." *Phillips v. Comm'r*, 283 U.S. 589, 598 (1931).

In 1942, Congress changed the name of the Board to "The Tax Court of the United States," although it continued to identify the Tax Court as "an independent agency in the Executive Branch."  Revenue Act of 1942, Pub. L. No. 77-753, § 504, 56 Stat. 798, 957 (1942) (leaving unchanged all other aspects of the Tax Court, *e.g.*, "jurisdiction, powers, and duties").   Once again, the constitutional status of the Tax Court was not in question.  The Supreme Court continued to treat the court as an independent executive agency, whose expertise was unquestioned; indeed, "no administrative decisions [were] entitled to higher credit in the courts." *Dobson v. Comm'r*, 320 U.S. 489, 498–99 (1943).  It was no surprise then, when following the passage of the APA, the Fourth Circuit concluded that "the Tax Court is not subject to

the Administrative Procedure Act" because it was not a "reviewing court" under § 706. *O'Dwyer v. Comm'r*, 266 F.2d 575, 580 (4th Cir. 1959).

All of that changed in 1969. In recognition of the Tax Court's judicial functions, Congress "established, under article I of the Constitution of the United States, a court of record to be known as the United States Tax Court." 26 U.S.C. § 7441; *see also* Harold Dubroff, *The United States Tax Court: An Historical Analysis—Part IV: The Board Becomes a Court*, 41 Alb. L. Rev. 1, 40–51 (1977). This time, the Tax Court's constitutional status did change. The Supreme Court held in *Freytag v. Commissioner* that the Tax Court "exercises a portion of the judicial power of the United States . . . to the exclusion of any other function." 501 U.S. 868, 891 (1991); *see also Comm'r v. Ewing*, 439 F.3d 1009, 1012 (9th Cir. 2006) ("The Tax Court, like any federal court, is a court of limited jurisdiction."). The Court found that "[t]he Tax Court's function and role in the federal judicial scheme closely resemble those of the federal district courts." 501 U.S. at 891. In contrast with its former status within the executive branch, the "Tax Court remains independent of the Executive and Legislative Branches." *Id.* Accordingly, the courts of appeals may "review [its] decisions 'in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury,'" a "standard of review [that] contrasts with the standard applied [under the APA]." *Id.* (quoting 26 U.S.C. § 7482(a) and citing 5 U.S.C. § 706(2)(A)).

## B. The Tax Court as a "Reviewing Court" Under § 706(2)(A)

Whatever authority the Board of Tax Appeals or the old Tax Court of the United States had as an executive agency to review IRS decisions, the United States Tax Court is now a court that exercises the judicial authority of the United States, and that puts it on a different plane from where it began. Because the IRS is an "agency," the Tax Court is a "reviewing court" for purposes of the APA, and "a reviewing court must apply the APA's court/agency review standards in the absence of an exception." *Dickinson v. Zurko*, 527 U.S. 150, 154 (1999). Or, as we have stated before, "a reviewing court must apply the deferential APA standard in the absence of a stated exception when reviewing federal agency decisions." *Ninilchik*, 227 F.3d at 1193. Exceptions to the APA may not be inferred, but must be express: a subsequent statute may not be held to supersede or modify the judicial review provisions of § 706, "'except to the extent that such legislation [does] so expressly.'" *Dickinson*, 527 U.S. at 154–55 (quoting 5 U.S.C. § 559). We have interpreted this to mean that "challenges to agency actions are subject to the APA's judicial review standard *unless Congress specifies* a contrary intent." *Ninilchik*, 227 F.3d at 1193 (emphasis added).

In *Dickinson*, the Supreme Court faced a similar issue head-on. The question was what standard of review the Federal Circuit should use when reviewing findings made by the Patent and Trademark Office ("PTO"). 527 U.S. at 152–54. The Federal Circuit, claiming that its authority predated the adoption of the APA in 1946, reviewed PTO findings for clear error, *see* Fed. R. Civ. P. 52(a), as though the PTO were a district court. *Dickinson*, 527 U.S. at 153–54.

The Supreme Court held, however, that the more deferential standard of 5 U.S.C. § 706(2)(A) governed. *Id.* at 154–55. The APA, the Court said, is a "uniform approach to judicial review of administrative action," and any departure from the APA's strict guidelines "must be clear." *Id.* (citing 5 U.S.C. § 559); *see* 5 U.S.C. § 559 ("[A]dditional requirements [not contained in the APA must be] imposed by statute or otherwise recognized by law."); *Marcello v. Bonds*, 349 U.S. 302, 310 (1955) ("Exemptions from the terms of the [APA] are not lightly to be presumed in view of the statement in [5 U.S.C. § 559] that modifications must be express . . . ."); *see also United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963) ("[W]here Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, this Court has held that consideration is to be confined to the administrative record and that no de novo proceeding may be held."). The Supreme Court squarely rejected the notion that anything less than a clear or express statement would suffice to create an exception to the APA. In "a field full of variation and diversity[, i]t would frustrate [the] purpose [of the APA] to permit divergence on the basis of a requirement 'recognized' only as ambiguous." *Dickinson*, 527 U.S. at 155; *see also* II Richard J. Pierce, Jr., Administrative Law Treatise § 11.1 at 772 (2002) ("The majority [in *Dickinson*] . . . seemed to establish a presumption in favor of uniformity in standards for judicial review of agency actions that can be overcome only by 'clear' evidence in support of a departure.").

In sum, the IRS is an agency for the purposes of the APA. The Tax Court is a "reviewing court," subject to the scope of review and standard of review provisions of the APA, unless Congress has expressly exempted the Tax Court from such provisions.

## II.  TAX COURT REVIEW OF EQUITABLE RELIEF UNDER § 6015(f)

The Tax Court claims, and the majority affirms, that it is exempt from following the APA when it reviews the Commissioner's innocent spouse rulings.  The Tax Court not only claims that it is exempt from the APA's scope of review in § 706, it claims that it has an unbounded scope of review and no standard of review.  As the Tax Court has stated, it will "apply a de novo standard of review as well as a de novo scope of review." *Porter II*, 132 T.C. at 210; *see also* Maj. Op. at 3, 30.  That is no "review" at all.  The Tax Court is simply deciding for itself, based on a record it will create for itself, whether the taxpayer is entitled to innocent spouse relief.  Under the Tax Court's view, the Commissioner's decision plays no role in the Tax Court's decision. *See Porter II*, 132 T.C. at 229 (Gustafson, J., dissenting) ("[The majority's] conception denudes th[e Secretary's] 'discretion' of any effect and contradicts the essence of discretion being granted to an agency.").  That is an extraordinary proposition of American administrative law—one that cries for clear statutory authorization from Congress.  To that question I now turn.

### A.  Innocent Spouse Relief Under § 6015

As the majority has ably described, an innocent spouse has long had some form of relief, from unpaid or deficient taxes, available under various provisions of the Internal Revenue Code. *See* Maj. Op. at 3–8.  Currently, 26 U.S.C. § 6015 provides two mechanisms for addressing innocent spouse claims.  First, "[u]nder procedures prescribed by the Secretary, if . . . there is an understatement of tax attributable to erroneous items of one individual filing the joint return,"

the "other individual"—*i.e.*, the "innocent spouse"—may "establish[] that in signing the return he or she did not know, and had no reason to know, that there was such understatement." 26 U.S.C. § 6015(b)(1)(B), (C). Where it would be "inequitable" to hold the innocent spouse liable, and the innocent spouse elects the benefits of § 6015, the innocent spouse "shall be relieved of liability for tax." *Id*. § 6015(b)(1)(D), (E); *see also id.* § 6015(c) (providing similar relief for taxpayers who are no longer married or are legally separated or not living together). Upon the filing of a petition for review, the Tax Court has jurisdiction to "determine the appropriate relief" for any individual "against whom a deficiency has been asserted." *Id.* § 6015(e)(1)(A).

Second, § 6015(f) authorizes the Secretary to grant innocent spouse relief where such relief is not available under § 6015(b) or (c). Section 6015(f) reads in its entirety:

> Under procedures prescribed by the Secretary, if—
>
>> (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
>>
>> (2) relief is not available to such individual under subsection (b) or (c),
>
> the Secretary may relieve such individual of such liability.

The Tax Court also has jurisdiction "to determine the appropriate relief available" "in the case of an individual who

requests equitable relief under subsection (f)." *Id.* § 6015(e)(1)(A).

I want to begin with a couple of simple observations about the interplay between these two forms of relief. First, the principal procedure for obtaining innocent spouse relief is found in § 6015(b) and (c). That benefit, if the innocent spouse qualifies and elects such relief, is mandatory: The innocent spouse "*shall* be relieved of liability for tax." *Id.* § 6015(b)(1)(E) (emphasis added). This remedy is only available under the conditions specified by Congress in § 6015 and under the regulations or procedures provided by the Secretary, *see* Treas. Reg. § 1.6015 (2012).

Second, if the Commissioner has denied innocent spouse relief under § 6015(b) or (c) and imposed a deficiency, the innocent spouse has a remedy in the Tax Court, and the court will review the deficiency under the its long-standing rules for reviewing taxpayer deficiencies. *See Clapp v. Comm'r*, 875 F.2d 1396, 1403 (9th Cir. 1989) (stating that the Tax Court reviews deficiency determinations de novo).

Third, in contrast to relief available under § 6015(b) and (c), § 6015(f) relief is an equitable remedy. Section 6015(b) is titled "Procedures for relief from liability applicable to all joint filers," while § 6015(f) is simply titled "Equitable relief." Moreover, the substance of § 6015(f) confirms its equitable nature. *See* 26 U.S.C. § 6015(f) ("[T]he Secretary *may* relieve such individual of such liability."(emphasis added)). "The word 'may' customarily connotes discretion." *Jama v. ICE*, 543 U.S. 335, 346 (2005) ("That connotation is particularly apt where, as here, 'may' is used in contraposition to the word 'shall' . . . ."); *Fernandez v. Brock*, 840 F.2d 622, 632 (9th Cir. 1988) ("'May' is a permissive

word, and we will construe it to vest discretionary power absent a clear indication from the context that Congress used the word in a mandatory sense."). *Compare* 26 U.S.C. § 6015(b)(1)(E) ("[T]he [innocent spouse] *shall* be relieved of liability for tax . . . ." (emphasis added)), *with* 26 U.S.C. § 6015(f) ("[T]he Secretary *may* relieve [the innocent spouse] of such liability." (emphasis added)).  Section 6015(f) relief may be had when other legal remedies fail, and it may not be had as a matter of right.  That makes § 6015(f) an equitable remedy to provide relief when an individual cannot obtain relief under either § 6015(b) or (c).  26 U.S.C. § 6015(e)(1) (referring to "equitable relief under subsection (f)"); *Cheshire*, 282 F.3d at 338.[2]

Fourth, the exercise of discretion is committed to "the Secretary"—meaning the Secretary of the Treasury—whose delegee is the Commissioner of the IRS.  Treas. Order 150-10 (April 22, 1982) (delegating the Secretary of the Treasury's authority to administer and enforce the Internal Revenue laws to the Commissioner of Internal Revenue).  That is, Congress has both made the grant of innocent spouse relief a matter of equity *and* committed it to the discretion of the Secretary of

---

[2] Both an innocent spouse's legal remedy under § 6015(b) and her equitable remedy under § 6015(f) depend on a finding that "it is *inequitable* to hold the other individual liable" for any deficiency or unpaid tax.  *Compare* § 6015((b)(1)(D) (emphasis added), *with* § 6015(f)(1) (emphasis added).  The fact that both remedies use the word "inequitable" does not make them both equitable remedies.  Many laws provide remedies to cure inequities; that does not convert them into equitable remedies, at least not as we have long used that term.  Equity is a discretionary remedy begun "'with a petition asking the king to interfere to secure justice where it would not be secured by the ordinary and existing processes of law.'"  Larry L. Teply & Ralph U. Whitten, Civil Procedure 33 (3d ed. 2004) (quoting George Burton Adams, *The Origin of English Equity*, 16 Colum. L. Rev. 87, 91 (1916)).

the Treasury or his delegee.  *See Porter II*, 132 T.C. at 226–28 (Gustafson, J., dissenting).

## B.  The Scope and Standard of Review of § 6015(f) Denials

The Tax Court arrived at its present position through a curious and circuitous route.  As the majority explains, Maj. Op. at 8–9, under the original scheme, Congress provided for statutory review where the Commissioner denied innocent spouse relief and assessed a deficiency.  That is, as originally enacted in 1998, the "Petition for review by Tax Court," § 6015(e), only applied to relief denied under § 6015(b) and (c).  *Comm'r v. Ewing*, 439 F.3d at 1012–13.  By its terms, § 6015(e) did not authorize the Tax Court to review the Commissioner's denial of discretionary relief under § 6015(f).  *Id.* at 1013.

Nevertheless, in *Ewing v. Comm'r (Ewing I)*, 118 T.C. 494 (2002) (en banc), the Tax Court decided that it had jurisdiction to hear a taxpayer's petition from the Commissioner's refusal to grant innocent spouse relief where no deficiency had been asserted.  *Id.* at 506–07.  In a subsequent opinion in the same case, a divided Tax Court further held that it could conduct a trial de novo to hear additional evidence not in the administrative record before the Commissioner, but that it would review the Commissioner's decision for an abuse of discretion.  *Ewing II*, 122 T.C. at 43–44.

On appeal to our court, we held that the Tax Court did not have jurisdiction to review the Commissioner's decision under § 6015(f), because its jurisdiction was limited to petitions "when a deficiency has been asserted and the

taxpayer has elected relief under [§ 6015(b) or (c)]." *Comm'r v. Ewing*, 439 F.3d at 1013. The Eighth Circuit followed suit in *Bartman v. Commissioner*. 446 F.3d 785, 787–88 (8th Cir. 2006) ("We agree with the Ninth Circuit that the tax court lacks jurisdiction under § 6015(e) unless a deficiency was asserted against the individual petitioning for review.") After our ruling in *Ewing*, the Commissioner's discretion was complete: His decision whether to grant or not grant equitable relief to innocent spouses was not only discretionary, but unreviewable in the Tax Court.

The Tax Court acquiesced in our decision in *Ewing* and sought a legislative fix. *Billings v. Comm'r*, 127 T.C. 7, 19–20 (2006) ("[U]ntil and unless Congress identifies this as a problem and fixes it legislatively by expanding our jurisdiction to review all denials of innocent spouse relief, it is quite possible that the district courts will be the proper forum for review of the Commissioner's denials of relief in nondeficiency stand-alone cases."). That same year Congress amended § 6015 to address our decision in *Ewing* and the Eighth Circuit's decision in *Bartman*. Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, § 408, 120 Stat. 2922, 3061–62. The new amendment added language to § 6015(e). *Id.* This is the relevant portion of that section, with the language added by the 2006 amendments in italics:

> (1) In general.—In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply, *or in the case of an individual who requests equitable relief under subsection (f)*—

(A) In general.—In addition to any other remedy provided by law, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section . . . .

26 U.S.C. § 6015(e)(1)(A) (emphasis added).

Again, I have a couple of observations. First, this section confirms that innocent spouse relief offered in § 6015(f) is equitable in nature. And, implicitly, it confirms the Secretary's discretion to grant it by repeating that the relief in question is the "equitable relief under subsection (f)." Second, the language added in 2006 cures the jurisdictional defect we identified in *Ewing*. It does so in the simplest of ways, by referring to subsection (f) in the general clause, which permits an individual to petition the Tax Court, that "shall have jurisdiction." 26 U.S.C. § 6015(e)(1)(A). Third, and most importantly, this section, as amended and considered as a whole, says absolutely nothing about the scope of review. In fact, it says nothing about either the scope of review or the standard of review that the Tax Court should use when reviewing the petition of "an individual who requests equitable relief under subsection (f)." *Id.* § 6015(e)(1). That is particularly significant after *Dickinson* because the Supreme Court had made it clear that ambiguous language would not support "divergence" from the APA; that is, any departure from the APA's scope of review and standard of review "must be clear." *Dickinson*, 527 U.S. at 154–55. Yet § 6015 makes no reference to the scope of review; it does not create a clear exception to the provisions of the APA.

Under the principles of *Dickinson* and our cases, that should be the end of the matter. Section 6015 falls well short of the "clear" or "express" language required to create an exception to the APA. Section 6015(e) may be considered a "special statutory review" provision for purposes of 5 U.S.C. § 703, but it does nothing more than grant jurisdiction to the Tax Court to review a taxpayer's innocent spouse claim. Section 6015(e), having failed to supply its own scope of review or to except Tax Court review from the APA, review of § 6015(f) petitions brought under § 6015(e) is governed, by default, by the APA. Thus, the scope of review for the Tax Court is the "whole record" before the Commissioner, and the standard of review of the Commissioner's exercise of discretion is the familiar standard, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[3]

---

[3] The Tax Court's review of tax deficiencies has, for largely historical reasons, been held to be de novo. *See Porter I*, 130 T.C. at 119 (describing the history underlying the Tax Court's deficiency jurisdiction); *see also Clapp*, 875 F.2d at 1403 ("The Tax Court has as its purpose the redetermination of deficiencies, through a trial on the merits, following a taxpayer petition. It exercises *de novo* review."). There would be nothing inconsistent in permitting the Tax Court to review innocent spouse claims under § 6015(b) and (c) through a trial de novo—just as other deficiencies are—while limiting the Tax Court's review of equitable relief under § 6015(f) to abuse of discretion.

In *Ewing II*, Judge Thornton made a strong argument that at the time the APA was passed, Congress intended that the Tax Court would continue using trials de novo when reviewing deficiency claims. 122 T.C. at 50–56 (Thornton, J. concurring). From this history, Judge Thornton concludes that APA § 706 does not govern proceedings in the Tax Court. *Id.* at 50 (Thornton, J., concurring). I respectfully disagree. As of 1946, when the APA was adopted, the Tax Court was exempt because it was not a court, but an executive branch agency. *See O'Dwyer*, 266 F.2d at 580 (holding that the predecessor of the current Tax Court was not a

Nevertheless, the Tax Court held, following the 2006 amendment expanding its jurisdiction, that it has even broader review power than any court or legislative body had previously recognized. *See Porter II*, 132 T.C. at 208 ("Given Congress's confirmation of our jurisdiction, reconsideration of the standard of review in section 6015(f) cases is warranted."). Overruling in part its 2004 decision in *Ewing II*, the Tax Court held that it would "apply a de novo

---

"reviewing court" under the APA). Once the Tax Court became an article I court in 1969, however, the APA applied to it as a "reviewing court." 5 U.S.C. § 706. If Judge Thornton's argument is correct, that Congress wanted the Tax Court to continue reviewing deficiency claims through trials de novo, that does not mean that the APA does not apply to the Tax Court. It means that § 706(2)(F) governs the Tax Court's review of deficiencies, rather than § 706(2)(A).

The Tax Court's historical de novo review of tax deficiencies—which dates to the 1920s—may have been grandfathered under the APA, but that tells us nothing about what the APA says about review of the Secretary's denial of equitable relief. Moreover, Section 6015(f)—which Congress first provided for in 1998—cannot have been grandfathered under § 706(2)(F) when the APA was adopted in 1946. Thus, innocent spouse relief cases must fall under 5 U.S.C. § 706(2)(A). While the majority effortlessly concludes that § 706(2)(F) applies to *all* innocent spouse relief cases, Maj. Op. at 20–22, § 706(2)(F) can only be applied in an innocent spouse relief case where "the agency factfinding procedures are inadequate." *Overton Park*, 401 U.S. at 415. This inquiry must be done on a case-by-case basis, hewing closely to the Court's admonition that § 706(2)(F) only be applied in *rare* circumstances. *Florida Light & Power*, 470 U.S. at 744; *see also Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2004) ("The scope of these exceptions permitted by our precedent is constrained, so that the exception does not undermine the general rule. Were the federal courts routinely or liberally to admit new evidence when reviewing agency decisions, it would be obvious that the federal courts would be proceeding, in effect, de novo rather than with the proper deference to agency processes, expertise, and decision-making."). The majority eschews this firm command.

standard of review as well as a de novo scope of review." *Id.*
at 210. Contrary to the statute (as amended), contrary to
*Dickinson*, and contrary to its prior cases, the Tax Court
decided that, henceforth, it would decide equity under
§ 6015(f) itself.[4]

In order to maintain this practice, the Tax Court will have
to demonstrate that Congress clearly exempted the Tax Court
from § 706(2)(A) and intended the Tax Court to be governed
by § 706(2)(F) when reviewing the Secretary's denial of
equitable relief under 26 U.S.C. § 6015(f).

## III. THE TAX COURT AND THE CASE FOR § 706(2)(F) REVIEW

The majority makes two main arguments in support of the
Tax Court's de novo scope of review. First, the majority
claims that the use of the word "determine" in § 6015(e) is
"plain language," Maj. Op. at 25–26, and "suggests a de novo
scope of evidentiary review in § 6015(f) cases," *id.* at 17.
Second, the majority points to the structure of § 6015 to
support the same conclusion. *Id*. at 18–20. I am going to
address both points.

---

[4] The combination of a de novo scope of review and de novo standard
of review ineluctably means that the Tax Court is deciding the question of
equitable relief. The decision to review the Secretary on a de novo scope
of review effectively determines that the standard of review will also be
de novo; a de novo scope of review but an abuse of discretion standard of
review are inconsistent. As we have pointed out, "[w]hen a reviewing
court considers evidence that was not before the agency, it inevitably leads
the reviewing court to substitute its judgment for that of the agency."
*Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980). *See Neal*,
557 F.3d at 1286–87 (Tjoflat, J., dissenting).

## A. Statutory Terms Suggesting De Novo Review

The majority's principal argument is that when Congress authorized the Tax Court "to *determine* the appropriate relief available to the individual under this section," it granted the Tax Court the power to decide the matter de novo, and not just de novo review, but trial de novo. Maj. Op. at 16–17 (quoting 26 U.S.C. § 6015(e)(1)); *see also Porter II*, 132 T.C. at 208 ("The use of the word 'determine' suggests that Congress intended us to use a de novo standard of review as well as scope of review."). That is a lot of weight to put on the word "determine," and I do not think it can bear it.

### 1. "Determine"

As an initial observation, Congress knows how to authorize a trial de novo.[5] Similarly, Congress knows the difference between trial de novo and de novo standards of review, and knows how to specifically authorize a de novo standard of review.[6] Where Congress has elected to use the phrase "de novo," either to refer to the scope of review or the

---

[5] *See, e.g.*, 5 U.S.C. § 706(2)(F); 5 U.S.C. § 7702(e)(3); 5 U.S.C. § 7703(c); 7 U.S.C. § 499g(c); 7 U.S.C. § 2023(a)(15); 28 U.S.C. § 657(a), (c); 38 U.S.C. § 7261(c); 42 U.S.C. § 300e-9(d)(3); 42 U.S.C. § 1995; 47 U.S.C. § 504(a).

[6] *See, e.g.*, 6 U.S.C. § 1142(c)(7); 12 U.S.C. § 1828(c)(7)(A); 12 U.S.C. § 1849(b)(1); 12 U.S.C. § 5567(c)(4)(D)(i); 15 U.S.C. § 2087(b)(4); 15 U.S.C. § 3414(b)(6)(F); 16 U.S.C. § 823b(b), (d)(3)(B); 18 U.S.C. § 1514A(b)(1)(B); 18 U.S.C. § 3613A(b)(1); 18 U.S.C. § 3742(e); 19 U.S.C. § 1625(b); 21 U.S.C. § 399d(b)(4)(A); 22 U.S.C. § 4140(b)(2); 28 U.S.C. § 2265(c)(3); 30 U.S.C. § 1300(j)(4)(ii)(I); 42 U.S.C. § 2282a(c)(3)(B); 42 U.S.C. § 5851(b)(4); 42 U.S.C. § 6303(d)(3)(B); 42 U.S.C. § 8433(d)(3)(B); 49 U.S.C. § 20109(d)(3); 49 U.S.C. § 31105(c).

standard of review, the express requirement of 5 U.S.C. § 559 may be satisfied.  *See Dickinson*, 527 U.S. at 154–55.

On the other hand, the word "determine" is, at best, an ambiguous term, "a woolly verb, its contours left undefined by the statute itself."  *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 452 (1989).  As a matter of common usage, nothing about the word "determine" inherently suggests—much less requires—that judicial review be had using a de novo scope of review and standard of review.[7]  Moreover, if we look at Congress's use of the word "determine" in other contexts, we will confirm its ambiguous usage.  In particular, since Congress has used "determine" in conjunction with the phrase "de novo," that strongly suggests that the use of the word "determine" or "determination" alone does not suffice to require a de novo scope of review and standard of review.[8]

In one such instance where Congress expressly required that a "de novo determination" be made, the Supreme Court held that meant de novo *review* and not necessarily a de novo *hearing*.  *United States v. Raddatz*, 447 U.S. 667, 674 (1980).  Section 636 of Title 28 authorizes district courts to refer certain pretrial matters to magistrate judges to "hear and determine."  With respect to certain dispositive motions, the magistrate judge proposes findings of fact and

---

[7] The definition of "determine" is: "To decide or settle (e.g., a dispute) authoritatively and conclusively," or "[t]o end or decide by final, esp. judicial action."  Webster's II New Riverside University Dictionary 369 (1984).  Likewise, *Black's Law Dictionary* defines a "determination" as: "A final decision by a court or administrative agency."  Black's Law Dictionary 514 (9th ed. 2009).

[8] *See, e.g.*, 18 U.S.C. § 3664(d)(6); 28 U.S.C. § 636(b)(1)(C).

recommendations, to which the parties may file objections. *Id.* § 636(b). The district court "shall make a *de novo determination* of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1)(c) (emphasis added). In *Raddatz*, the Court found it "clear that on these dispositive motions, the statute calls for a *de novo* determination, not a *de novo* hearing." 447 U.S. at 674. It explained that Congress's use of the phrase "de novo determination" did not require a judge to "rehear the contested testimony in order to carry out the statutory command to make the required 'determination.'" *Id.* In support of its interpretation, the Supreme Court looked to the legislative history, where Congress explained its use of the phrase "de novo determination":

> The use of the words 'de novo determination' *is not intended to require the judge to actually conduct a new hearing* on contested issues. Normally, the judge, on application, will consider the record which has been developed before the magistrate and make his own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate. In some specific instances, however, it may be necessary for the judge to modify or reject the findings of the magistrate, to take additional evidence, recall witnesses, or recommit the matter to the magistrate for further proceedings.

*Id.* at 675 (quoting H.R. Rep. No. 94-1609, at 3 (1976)). Thus, "[t]he legislative history discloses that Congress purposefully used the word *determination* rather than

*hearing*," thereby "providing for a 'de novo determination' rather than *de novo* hearing." *Id.* at 676.

The obvious lesson from *Raddatz* is that even the term "de novo determination" is not "plain text," but requires consideration of its context and its legislative history in order to understand it. But we should also take away that the word "determine" does not self-evidently mean "determine de novo." And, even if we thought it might, it does not tell us whether the de novo determination refers to the standard of review or the scope of review. In our case, we do not have the interpretive tools that the Court had available in *Raddatz*. Congress did not modify "determine" with the words "de novo," and it offered us no legislative history to illuminate the meaning of "determine" in § 6015(e). That word is simply too ambiguous to authorize the wholesale expansion of the review power claimed by the Tax Court.

Moreover, the context in *Raddatz*—a district court reviewing a magistrate judge's findings and recommendations—was a far more compelling case for de novo review of some kind than the context of a court reviewing an executive agency's decision.[9] As the Court

---

[9] A magistrate judge is an "adjunct" of an article III district court. *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 78–81 (1982). This means that the full authority to "deal with matters of law" is reserved to an article III court, providing for "the appropriate exercise of the judicial function." *Id.* at 81. Thus, a magistrate judge does not usurp the judicial power when properly functioning as an adjunct of an article III court. The Court recognized two significant principles that are important here. First, "it is clear that when Congress creates a substantive federal right, it possesses substantial discretion to prescribe the manner in which that right may be adjudicated . . . ." *Id.* at 80. Second, the "functions of the adjunct must be limited in such a way that 'the essential

explained in *Florida Power & Light Co. v. U.S. Nuclear Regulatory Commission*:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. *The reviewing court is not generally empowered to conduct a* de novo *inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.*

470 U.S. 729, 744 (1985) (emphasis added). Unless Congress has expressly authorized a trial de novo, only the rarest of circumstances will justify a court reviewing administrative action de novo. *See, e.g.*, Ronald M. Levin, *Scope-of-Review Doctrine Restated: An Administrative Law Section Report*, 38 Admin. L. Rev. 239, 273–77 (1986); Nathaniel L. Nathanson, *Probing the Mind of the Administrator: Hearing Variations and Standards of Judicial Review Under the Administrative Procedure Act and Other Federal Statutes*, 75 Colum. L. Rev. 721, 755 (1975).

---

attributes'" of the constitutional power at issue, are retained in the proper branch. *Id.* So, district court review of a magistrate judge's determination is not subject to the same separation of powers concerns, because it is only the court's own judicial power that is being exercised. This is inapposite to the case at hand. The Commissioner is not an "adjunct" of the Tax Court, although the Tax Court's scope of review and standard of review in innocent spouse relief cases suggest as much.

### 2.  "Determine" v. "Redetermine"

Alternatively, the Tax Court has relied upon the similarity between the use of "determine" in § 6015(e) and its power to "redetermine" tax deficiencies. *Porter I*, 130 T.C. at 118–19 (referring to 26 U.S.C. §§ 6213(a) and 6214(a)); *see also* Maj. Op. at 28–30; *Ewing I*, 122 T.C. at 38 ("We see no material difference between the words 'determine' in section 6015(e) and 'redetermination' in section 6213(a) . . . ."). Although I continue to believe that the term "determine" is ambiguous, I am quite unpersuaded that "determine" and "redetermine" mean the same thing.  If anything, the case for "redetermination" meaning some kind of de novo review is much stronger than for the term "determine."  The use of the prefix "re-," to modify the word "determine," suggests that something has been, or must be, done again; a definition in closer harmony with a de novo standard.  *See* Webster's II New Riverside University Dictionary 977 (1984).  If anything at all is to be gleaned from this, the fact that Congress used "redetermine" to describe the Tax Court's review of deficiencies suggests that "determine" must mean something else.  It seems to me that the Tax Court has this one exactly backwards.[10]

In *Robinette v. Commissioner*, the Eighth Circuit faced a related issue.  439 F.3d 455 (8th Cir. 2006).  There, the Tax

---

[10] Further, any reading of "redetermination" must be informed by the fact that the Tax Court has long had special jurisdiction over deficiencies. That jurisdiction is accounted for in the Tax Court's jurisdiction over innocent spouse relief available under § 6015(b) and (c).  On the other hand, nothing in § 6015(f) requires that a deficiency have been assessed. Section 6015(f) is not limited to relief from a deficiency; it is self-consciously "relief . . . *not* available to such individual under subsection (b) or (c)." § 6015(f)(2) (emphasis added).

Court had invoked its traditional use of "*de novo* proceedings in deficiency proceedings" to justify a trial de novo in "collection due process hearings" under 26 U.S.C. § 6330. *Id.* at 459–61. Approaching the issue through the framework of the APA, the Eighth Circuit could not find any connection to the Tax Court's deficiency jurisdiction. *See id.* at 461 ("We do not think the proposed conclusion follows from the history. Collection due process hearings under § 6330 were newly-created administrative proceedings in 1998, and the statute provided for a corresponding new form of limited judicial review. The nature and purpose of these proceedings are different from deficiency determinations, and it is just as likely that Congress believed judicial review of decisions by appeals officers in this context should be conducted in accordance with traditional principles of administrative law.").[11] The Eighth Circuit held that the Tax Court's review

---

[11] In *Porter I*, the Tax Court purported to distinguish *Robinette* based on the fact that § 6330 (at issue in *Robinette*) does not use the word "determine," and "the use of the word 'determine' [in § 6015(e)] suggests that [the Tax Court should] conduct a trial de novo." 130 T.C. at 120; *see also Neal*, 557 F.3d at 1275–76. As discussed above, the mere use of the word "determine" alone is insufficient to satisfy the demands of 5 U.S.C. § 559's "express" requirement.

*Porter I* also relied on the fact that under 26 U.S.C. § 6512(b), the Tax Court may "determine" overpayments. 130 T.C. at 119; *see also Ewing I*, 122 T.C. at 38. At first glance, this appears to be a stronger position, but § 6512(b) is inextricably connected with, and dependent upon, the Tax Court's jurisdiction to "redetermine" deficiencies. The Tax Court can only make a determination as to an overpayment when the Tax Court has received a petition for review of a deficiency determination by the Secretary and, during its deficiency "redetermination," finds that "there is no deficiency and further finds that the taxpayer has made an overpayment of income tax." 26 U.S.C. § 6512(b)(1).

was governed by § 706. *Id.* at 459–62. We have since cited *Robinette* with approval. *Keller*, 568 F.3d at 718.

### 3. "Petition" v. "Appeal"

The majority also looked to the Eleventh Circuit's decision in *Neal*, where that court ascribed great weight to the difference between the words "petition" and "appeal." Maj. Op. at 17–18 (quoting *Neal*, 557 F.3d at 1265). According to the majority:

> Section 6015(e) expressly grants jurisdiction to the Tax Court to "determine the appropriate relief available to the individual." Section 6015(e) does not say the taxpayer "may appeal" the Commissioner's § 6015(f) decision to the Tax Court or that the Tax Court may hear an appeal. Rather, § 6015(e) authorizes the taxpayer to seek § 6015(f) relief from the Tax Court.

Maj. Op. at 17 (quoting *Neal*, 557 F.3d at 1265 (internal citations omitted)); *see also Neal*, 557 F.3d at 1276 ("Congress's use of the word 'determine' and not 'appeal' in § 6015(e)'s jurisdictional grant is significant."). I am not sure what significance the majority thinks we should draw from the use of the word "petition" instead of "appeal." Section 6015(e) is actually entitled "Petition for review by Tax Court," thus the subsequent use of the word "petition" must be understood in the context that it is a petition *for*

*review*.[12]    I do not know of any established difference between the use of "petition" and "appeal" that would dictate the standard of review.  At least in administrative practice, those terms have been used interchangeably.  Many statutes authorizing judicial review of agency action refer to the action initiating statutory review as a "petition."[13]   Others refer to the same action as an "appeal,"[14] and at least one statute authorizes "[a]n appeal," which must be initiated by filing "a written petition."[15]  The APA refers only to "review" of agency action, without associating either "appeal" or "petition" with such review.  Our own rules refer to "appeals" from district courts, Fed. R. App. P. 3, and "petitions for review" from the orders of administrative agencies, Fed. R. App. P. 15(a), but our tradition of designating some parties "appellants" and others "petitioners" appears to flow from tradition enshrined in rule rather than from some intuitive

---

[12] *Black's Law Dictionary* defines "petition" as: "A formal written request presented to a court or other official body."   Black's Law Dictionary 1261 (9th ed. 2009). Thus, quite literally, a petition for review, in this context, is a formal written request presented to the Tax Court for review of the Secretary's innocent spouse relief decision.  On the other hand, an "appeal" is defined as: "A proceeding undertaken to have a decision reconsidered by a higher authority; esp., the submission of a lower court's or agency's decision to a higher court for review and possible reversal."  Black's Law Dictionary 112 (9th ed. 2009).

[13] *See, e.g.*, 7 U.S.C. § 9(11)(B)(ii) (Secretary of Agriculture); 8 U.S.C. § 1252(a)(5) (Board of Immigration Appeals); 15 U.S.C. § 45(c), (d) (Federal Trade Commission); 15 U.S.C. § 77i(a) (Securities and Exchange Commission); 29 U.S.C. § 160(f) (National Labor Relations Board).

[14] *See, e.g.*, 33 U.S.C. § 1319(g)(8) (Environmental Protection Agency); 47 U.S.C. § 402(b) (Federal Communications Commission).

[15] 27 U.S.C. § 204(h) (providing for review of Treasury's denial of a federal alcohol permit).

meaning. Thus, there is no legal significance to Congress authorizing a "petition" instead of an "appeal," and Congress's choice of the word "petition" in § 6015(e) tells us nothing about the scope of review or standard of review.

\* \* \* \* \*

In sum, nothing in the text—much less the "plain text"—compels the majority's analysis. The word "determine" does not tell us what kind of review the Tax Court is authorized to conduct, and in the absence of clear direction from Congress, that means the APA governs its review.

## B. Structural Arguments Suggesting De Novo Review

The majority also relies on the structure of § 6015 in support of the proposition that § 6015(e) requires a de novo scope of review and standard of review. Maj. Op. at 18–20. I am going to address each of its points, which I do not think persuasive.

### 1. "Totality of the Circumstances"

The majority argues that because § 6015(e) requires that the Tax Court "determine the appropriate relief available," the Tax Court must consider § 6015(f)'s "totality of the circumstances" in the same manner as the Secretary would. Maj. Op. at 18–20 (internal quotations omitted). Thus, the majority states that "'[t]aking into account all the facts and circumstances' is not possible if the Tax Court can review only the evidence available at the time of the Commissioner's prior determination." Maj. Op. at 18 (internal quotations omitted).

With all due respect, this problem is overblown. Although § 6015(f) requires that the totality of the circumstances be considered, it is specifically directed to the Secretary. It is the *Secretary* who must "tak[e] into account all the facts and circumstances," not the Tax Court. 26 U.S.C. § 6015(f). Congress gave the Tax Court no such charge. Instead, the Tax Court possesses the power to *review* the Secretary's decisions under § 6015(f), not to independently apply it. *See* 26 U.S.C. § 6015(e)(1). Here, there is no reason that the Tax Court cannot review the Secretary's decision based on the administrative record. And that is well suited for abuse-of-discretion review. If the Secretary failed to consider all the facts and circumstances in the record before him, then he has failed to follow Congress's directions, and he has likely abused his discretion. *See, e.g.*, *Astrero v. INS*, 104 F.3d 264, 267 (9th Cir. 1996) ("[T]his Court may not substitute its sense of what constitutes hardship in a given case unless the Board abused its discretion, by failing to consider all relevant facts bearing upon extreme hardship or to articulate reasons supported by the record for denying suspension of deportation.").

## 2. Intervention

The majority is also concerned that application of the record rule would eviscerate the right of a spouse to intervene under § 6015(e)(4). Maj. Op. at 19 ("By 'expressly providing for intervenors in section 6015(f) . . . cases . . . Congress contemplated a new record made initially in the reviewing court.' Moreover, the right to intervene provided by § 6015(e)(4) would be eviscerated without the ability to present new evidence." (quoting *Porter II*, 132 T.C. at 220 (Gale, J., concurring)) (internal citation omitted); *see Ewing II*, 122 T.C. at 43. The right to intervene in a petition for

review cannot dictate the standard of review, and nothing in § 6015 gives the intervenor the right to proffer additional evidence.

Like the Tax Court, our rules provide for intervention in a "petition for review" of an agency order. Fed. R. App. P. 15(d). Under the APA, we must review the whole record, 5 U.S.C. § 706(2), which is the record before the administrative agency, and we will review extra-record materials under limited circumstances. *City of Las Vegas v. FAA*, 570 F.3d 1109, 1116 (9th Cir. 2009) ("Courts may review such extra-record materials only when: (1) it is necessary to determine whether the agency has considered all relevant factors and explained its decision, (2) the agency has relied on documents not in the record, (3) supplementing the record is necessary to explain technical terms or complex subject matter, or (4) plaintiffs make a showing of bad faith."). Intervenors may urge a reviewing court to consult additional materials, but they have no right to expand the record before us by virtue of their intervention. *See City of Arlington v. FCC*, 668 F.3d 229, 239 (5th Cir. 2012) ("[A] party [cannot] rely on her timely intervention with respect to another party's petition for review to raise matters outside the scope of the other party's petition."); *Platte River Whooping Crane Critical Habitat Maint. Trust v. FERC*, 962 F.2d 27, 37 n.4 (D.C. Cir. 1992) ("[I]ntervenors may only join issue on a matter that has been brought before the court by another party.") (internal quotation marks omitted). And no one has ever thought that intervention affected our standard of review, much less the scope of our review. *See Andersen v. Dist. of Columbia*, 877 F.2d 1018, 1025 (D.C. Cir. 1989) ("The authority . . . to receive new evidence does not transform the review proceedings into a trial *de novo*.").

### 3.  Timing and Affirmative Defenses

The majority has also raised the specter of the timing of the petition and the use of § 6015(f) as an affirmative defense as reasons for recognizing de novo review in the Tax Court. Maj. Op. at 19 ("There are two other contexts where a de novo scope of review is not only permitted, but expected. First, when a taxpayer requests § 6015(f) relief but the Commissioner fails to make a determination regarding the request within six months, the taxpayer may petition the Tax Court to render the determination. . . . The Tax Court also proceeds de novo when confronted with taxpayers who raise relief under § 6015(f) as an affirmative defense in § 6015(b) and § 6015(c) deficiency cases."); *see Ewing II*, 122 T.C. at 42.  Neither of these supplies a reason for de novo review.

As to the timing of a petition, § 6015(e)(1)(A) provides that a petition for review must be filed within 90 days of the Secretary's final decision, or within six months after relief has been requested if the Secretary has failed to act.  In the latter case, if the Secretary has failed to address a request for innocent spouse relief, the petitioner may argue that the Secretary has unreasonably withheld relief.  The APA authorizes a reviewing court to "compel agency acts unlawfully withheld or unreasonably delayed," but it does not authorize the court to preemptively decide the matter. 5 U.S.C. § 706(1).  "[W]hen an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be."  *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004).

As to the question of raising § 6015(f) as an affirmative defense in a deficiency case, I am not sure I see the problem. Section 6015(f) relief is not the same as relief under § 6015(b) or (c). Both may involve claims related to innocent spouses, but one is a legal remedy for which there is a special review proceeding available in the Tax Court and the other is an equitable remedy committed to the discretion of the Secretary. Thus, contrary to the Tax Court, there is good reason to accept that these matters should not receive "similar treatment and, thus, the same standard of review." *Ewing II*, 122 T.C. at 43; *see also Cheshire*, 282 F.3d at 338 (distinguishing between the standard of review applicable to each remedy). Section 6015(f) exists precisely because Congress anticipated that relief under § 6015(b) and (c) might not be available. In this context, I cannot see that § 6015(f) is an affirmative defense enforceable by the court in the absence of a decision by the Secretary. If the putative innocent spouse has no defense under § 6015(b) and (c), she must seek relief under § 6015(f) from the Commissioner, not the court.

### 4. Remand Authority

Finally, the majority states that "[s]ection 6015(e) not only makes no mention of remand, it instructs the Tax Court to proceed de novo when reviewing certain § 6015(f) petitions. Applicable precedent, moreover, restricts the Tax Court from remanding § 6015(f) cases to the Commissioner for further administrative consideration." Maj. Op. at 20 (citing *Friday v. Comm'r*, 124 T.C. 220, 222 (2005)). The Tax Court has expressed its concern that it cannot remand such cases to the Secretary as a justification for its de novo review. *Porter II*, 132 T.C. at 209–10; *id.* at 220 (Gale, J., concurring); *id*. at 225 (Wells, J., dissenting).

First, if the problem is *Friday*, the Tax Court should reconsider its position.  Implicitly, the courts have power to remand to administrative agencies, with or without express remand authority.  As the Court stated in *Florida Power & Light*:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, *the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation*. The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.

470 U.S. at 744 (emphasis added); *see also INS v. Ventura*, 537 U.S. 12, 16–17 (2002) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands.").  In particular, the power (and duty) of the courts to remand to administrative agencies when the agency errs in some way—even as to matters of equity—has been a precept of administrative law that antedates the APA.  *SEC v. Chenery Corp. (Chenery I)*, 318 U.S. 80, 93, 95 (1943) ("Judged, therefore, as a determination based upon judge-made rules of equity, the Commission's order cannot be upheld. . . . The cause should therefore be remanded to the Court of Appeals with directions to remand to the Commission for such further

proceedings, not inconsistent with this opinion, as may be appropriate.").

Second, if the Tax Court does not wish to revisit its opinion in *Friday*,[16] then it should seek such remand authority from Congress. But, I cannot fathom that the existence *vel non* of remand authority determines the Tax Court's scope of review.

## IV.  CONCLUSION

Even if the text, structure, and legislative history of the statute provide *some* support for a de novo scope of review and standard of review, this is insufficient to overcome the strong presumption that the Tax Court is bound to review the Secretary's exercise of discretion under § 706(2)(A). Congress is free to insert language expressly applying a de novo scope of review and standard of review in § 6015(e). This, however, it has not done. The Tax Court's actions have rendered the APA meaningless, frustrating Congress's intent "to bring uniformity to a field full of variation and diversity." *Dickinson*, 527 U.S. at 155.

I respectfully dissent.

---

[16] Ironically, *Friday* notes that "in our consideration of a request for relief under sec. 6015(f), the standard for review is abuse of discretion." 124 T.C. at 222 n.4. The Tax Court did not hesitate to overrule this portion of its holding in *Porter II*. 132 T.C. at 210.